IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAS MFG INC. and ALLAN D. BAIN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Case No.: 4:24-cv-002923 |
| SAFE LIFE DEFENSE LLC, and NICHOLAS GROAT, | § § § § | **ANSWER AND COUNTERCLAIM** |
| Defendants. | § § | |
| SAFE LIFE DEFENSE, LLC, | § § | |
| Counter-claimant, | § § | |
| v. | § § | |
| SAS MFG, INC., ALLAN D. BAIN, | § § | |
| Counter-defendants. | § § § | |

Defendant Safe Life Defense LLC ("Safe Life"), and Nicholas Groat ("Groat") (collectively, "Defendants") through undersigned counsel, hereby answer the Second Amended Complaint as follows:

1.      Defendants deny the allegations contained in paragraph 1.

2.      Defendants deny the allegations contained in paragraph 2.

3.      Answering paragraph 3, Defendants state that this paragraph asserts a legal assertion to which no response is required and, on that basis, deny the allegations in paragraph 3.

4.      Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 4, and on that basis, deny them.

5.      Defendants lack knowledge and information sufficient to form an opinion as to the

truth of the allegations in paragraph 5, and on that basis, deny them.

6.    Defendants admit paragraph 6.

7.    Answering paragraph 7, Defendants admit that Nicholas Groat is a founder of Safe Life and its Manager and deny all other allegations contained in paragraph 7.

8.    Answering paragraph 8, Defendants state that this paragraph asserts a legal conclusion to which no response is required and, on that basis, denies paragraph 8.

9.    Defendants deny paragraph 9.

10.    Answering paragraph 10 with respect to its multiple subparts:

a.    Defendants deny the allegations in 10(a);

b.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 10(b), and on that basis, deny them;

c.    Defendants admit that it has a website that may be accessed by anyone with an internet connection and deny all other allegations contained in paragraph 10(c);

d.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 10(d), and on that basis, deny them;

e.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 10(e), and on that basis, deny them;

f.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 10(f), and on that basis, deny them.

.

11.    Answering paragraph 11, Defendants admit that Groat is Safe Life's CEO and

founder and deny all other allegations contained in paragraph 11.

12.     Answering paragraph 12, Defendants admit that they sell products through their website and that residents of Texas may access and purchase products from that website and deny all other allegations contained in paragraph 12.

13.     Answering paragraph 13, Defendants state that this paragraph asserts a legal conclusion to which no response is required and on that basis, denies paragraph 13.

14.     Answering paragraph 14, Defendants admit that there is a patent filing pertaining to Hexar on or around October 21, 2014, but state that public statements by Bain admit that the Hexar product has been on "on the shelf" and presented to customers in 1995, which calls into question the validity of the patent and lacks knowledge and information sufficient to form an opinion as to any remaining allegations in paragraph 14 and, on that basis, denies them.

15.     Answering paragraph 15, Defendants admit that Safe Life commenced offering flexible rifle rated armor in or around 2020 and that components within that armor is based upon a patent held by a foreign manufacturer and deny all other allegations contained in paragraph 15.

16.     Answering paragraph 15, based upon Plaintiffs' many public statements, both on the SAS website and other advertising that SAS's Hexar product was made in America, Defendants admit that Safe Life reached out to SAS on the prospect to acquire the Hexar patent or license it in order to have a second product line appealing to purchasers seeking domestically manufactured products and thereby acquire larger market share.  Defendants further admit the negotiations broke down because of irrational price demands by Plaintiffs and, after Safe Life indicated it would not proceed, SAS, through its principal, Mr. Bain, commenced manufacturing claims of, for example, patent infringement, which is not true and making threats of litigation unless Safe Life purchased his patent at his unreasonably high price, and that Safe Life declined to be extorted. Defendants

deny all other allegations in paragraph 16.

17.     Answering paragraph 17, Defendants admit that it offers several different products, including FRAS flexible rifle-rated armor in approximate size of 10 x 12 and deny all other allegations contained in paragraph 17.

18.     Answering paragraph 18, Defendants lack knowledge and information sufficient to form an opinion as to the truth of allegations contained in Paragraph 18 pertaining to SAS, its acquisition of Safe Life products and SAS's alleged findings or conclusions, and on that basis deny them, and admit that the industry standard with respect to armor plate sizing is to state the nominal size in round numbers and that it is common to have some variation in the internal dimensions up to approximately .5 inch and deny all other allegations contained in paragraph 18 and specially aver that SAS only commenced adding a "disclaimer" or note of the variation to its website in 2024, just prior to commencing this lawsuit.

19.     Answering paragraph 19, Defendants lack knowledge and information sufficient to form a conclusion regarding SAS's review or conclusions and deny all other allegations contained in paragraph 19.

20.     Answering paragraph 20, Defendants admit that in 2022, Bain and SAS continued to attempt to extort money from Safe Life by threatening to make false claims regarding Safe Life Products and a negotiation tactic to coerce some form of license or other business relationship, which was rejected by Safe Life. Safe Life admits that it remained interested in acquiring a fully domestically made product line and one possibility remained either a purchase of the Hexar patent or license agreement, if Plaintiffs ceased demanding unreasonable term and ultimately, a License Agreement was executed in or around October 27, 2023, and for which Safe Life paid ███, ███████, and which SAS and/or Bain immediately breached and have never performed the

4

terms, including, but not limited to, ████████████████████████████████████

████████████████████████████████████████████ Defendants deny all allegations

contained in paragraph 20 and deny the fact and assertions contained within Exhibit 4 attached to

the SAC, which threats and attempted extortion was rejected by Safe Life.

21.     Defendants deny the allegations in paragraph 21.

22.     Defendants deny the allegations in paragraph 22 and deny ever advertising its

products in terms of square inches covered but admit that for a period of time, an interior label on

certain products created and affixed by the European manufacturer, did contain a mistake in the

area calculation.

23.     Defendants deny the allegations in paragraph 23.

24.     Answering paragraph 24, Defendants admit that certain pages of its website contain

a sales counter and lack knowledge and information sufficient to form an opinion as to the truth of

the remaining allegations in paragraph 24 and, on that basis, deny them.

25.     Answering paragraph 25, Defendants lack knowledge and information concerning

the first and second sentences of paragraph 25 and, on that basis denies them. Defendants further

admit that it does not advertise its products in any way as defeating specialty armor piercing rounds

such as the M-43 and denies all other allegations contained in paragraph 25

26.     Defendants admit that since Safe Life's entry into the market, Bain and SAS have

engaged in a publicity campaign to falsely malign Safe Life Products and engaged in an attempt

to extort Safe Life into giving him money far in excess of the value of the Hexar patent for a license

or purchase of the Hexar patent through treats of commencing public lawsuits based on inaccurate

and false claims and deny all other allegations contained in paragraph 26.

27.     Answering paragraph 27, Defendants admit that, like all sellers of products, its

website contains positive descriptions, opinions and discussions of its products, including the opinion that its product is unmatched and denies all other allegations contained in paragraph 27.

28.     Defendants deny the allegations contained in paragraph 28.

29.     Answering paragraph 29, Defendants incorporate and re-allege the above responses in paragraphs 1-28 as though fully set forth here.

30.     Defendants deny paragraph 30.

31.     Defendants deny paragraph 31.

32.     Defendants deny paragraph 32.

33.     Defendants Deny paragraph 33.

34.     Defendants deny paragraph 34.

35.     Defendants deny paragraph 35.

36.     Defendants deny each and every allegation contained in the Second Amended Complaint not expressly admitted in the above paragraph numbered 1 through 35 and deny Plaintiffs are entitled to the relief sought in the prayer for relief. Defendants further lack knowledge or information as to the authenticity, accuracy, relevance and contents of the attachments to the Second Amended Complaint and, on that basis deny them.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs' claims fail to state a claim upon which relief may be granted.

2.     One or both Plaintiffs lack standing to assert the claims in the Second Amended Complaint as a result of (1) the failure to be a party entitled to bring claims for false advertising as a competitor of Safe Life and/or (2) the License Agreement executed by SAS (through Bain) in which SAS agreed, as of November 2024, to exit the flexible rifle armor market entirely for the entire term of the License Agreement.

6

3.      Plaintiffs' claims are barred in whole or in part by the doctrines of waiver and/or estoppel.

4.      As Plaintiffs admit, industrywide manufacturers use nominal dimensions that contain minor variations in actual size (typically .5 inches or less), and like many products, such as clothing, lumber and other such products, it is not custom nor practice in the industry to contain more precise measurements or other disclaimers.

5.      Safe Life advertising did not mislead, nor is it likely to mislead, any customers of Safe Life.

6.      Plaintiffs' damages, which are denied to exist at all, are wholly speculative.

7.      Plaintiffs' claims are barred, in whole or in part, as a result of their own conduct in violation of the Lanham Act, among other laws, in their gross public misrepresentation of both the national origin of SAS products and the lack of adequate or comprehensive testing of SAS products.

8.      Plaintiffs failed to mitigate their damages.

9.      The court lacks jurisdiction over one or more of the defendants.

10.     Plaintiffs' claims are barred in whole or in part by the statute of limitations.

11.     Plaintiffs' equitable claims are barred, in whole or in part as a result of latches.

12.     Plaintiff equitable claims are barred, in whole or in part, as a result of Plaintiffs' own unclean hands arising from their own unfair competition, false advertising and other conduct.

Wherefore, Defendants pray:

1.      That Plaintiffs take nothing by way of their Complaint;

2.      That Defendants be awarded their reasonable attorneys' fees and costs;

3.      For such other relief the Court deems just and proper.

## COUNTER CLAIMS

## THE PARTIES

1.      Counter-claimant Safe Life is a limited liability company organized in the state of Nevada and having its principal place of business in the State of Nevada.

2.      Counter-defendant SAS is a Texas corporation with its principal place of business in Missouri City, Texas.

3.      Counter-defendant Bain claims to be the inventor of Hexar, and the owner and principal of Counter-defendant SAS. On information and belief, he resided in Texas.

## JURISDICTION AND VENUE

4.      Jurisdiction in the federal district court is proper under 28 U.S.C. §1338 because this action involves citizens of different states and the amount in controversy exceeds $75,000.00. Further, federal question jurisdiction under 28 U.S.C. §1331 exists because the counter-claims asserted herein arise from the Lanham Act, which confers federal subject matter jurisdiction. 15 U.S.C. § 1121.

## FACTS

## COUNTER-DEFENDANTS CAMPAIN OF UNFAIR COMPETITION BY FALSELY DISPARAGING SAFE LIFE PRODUCTS AND MISREPRESENTING THE ORIGIN AND TESTING OF SAS PRODUCTS IN ADVERTISING

5.      Since Safe Life's flexible rifle-rated armor products were introduced to the market, they were highly regarded and enjoyed popularity.

6.      SAS, and its principal, Bain, who have admitted that the entry of Safe Life into the flexible rifle-rated armor market has resulted in an overall increased interest in and demand for

8

flexible armor (including SAS's products), commenced almost immediately a campaign of false criticisms of not only Safe Life, but any other manufacturer, while attempting to boost SAS's sales with f███████████████████████████████.

7.     This campaign to disparage Safe Life was multi-faceted, with statements appearing on SAS's website, made in SAS/Bain's public statements, and through a concerted social media advertising campaign where Bain, as himself, or, on information and belief, using a pseudonym, or through an agent, would bash Safe Life products unfairly and falsely while making ████████ ██████████████████████.

8.     ████████████████████████████ SAS and Bain, made assertions that SAS products were "100% Made In America" or "100% Made in USA." Indeed, SAS and Bain would emphasize the domestic origin of its armor, while at the same time criticizing Safe Life products because Safe Life uses a manufacturer in Italy. Bain and SAS particularly bashed any product sourced from China.

9.     As will be discussed further below, ████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██.

10.     Further, as part of their advertising and public statements, SAS and Bain made representations alleging that SAS has a robust and comprehensive testing regime, where each product is tested to determine its protective effect as to each specific threat for which it is rated and that SAS testing regime includes "batch" testing to ensure conformity and uniformity in terms of protection from distinct lots of product components.

11.    As will be discussed further below, ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

**SAFE LIFE OBTAINS AN EXCLUSIVE LICENSE AND** ███████████████████

12.    In the past several years, SAS, through its owner and CEO Bain, has engaged in a campaign of criticizing Safe Life products while boasting of the superiority of his SAS products. For example, Mr. Bain has commented on his products being wholly manufactured in the United States (also represented on the SAS website) while criticizing Safe Life for utilizing certain components from foreign manufacturers. Mr. Bain has also criticized Safe Life's quality while at the same time boasting about SAS products and testing. Specifically, Mr. Bain has represented that each and every SAS product is fully tested for the advertised rated ballistic threat and that SAS engaged in ongoing "batch" testing (additional testing for each new shipment of component materials).

13.    In or around June 2023, seeking to increase its market share in the flexible rifle-rated armor market, and in particular, acquire a wholly domestically produced product line, Safe Life commenced negotiations with Defendant SAS to obtain an exclusive license to SAS's patented flexible rifle-rated armor technology and product lines. Safe Life commenced these negotiations for two reasons: (i) it wished to expand its line of offerings and offer "proven" (i.e., comprehensively tested) 100% Made in America technology to its customers seeking flexible rifle-rated body armor; and (ii) it wished to end SAS's incorrect and unfair disparagement of Safe Life and Safe Life's Products by ██████████████████.

14.     In deciding to pursue an exclusive license from SAS, Safe Life reviewed and relied upon SAS's public representations and marketing (often used to criticize Safe Life products) that

a.   SAS used a rigorous and ongoing testing regime for its products to ensure performance standards are met, including batch testing to ensure every received batch of component materials has been re-tested to meet standards; and

b.   SAS products were "100% Made In America" and/or "100% Made in USA".

15.     On or about June 28, 2023, Bain and SAS demanded that Safe Life execute a Non-disclosure Agreement, which Safe Life did execute.  The purported purpose of this Agreement was to facilitate the delivery of information by SAS to Safe Life about its products, sources, cost structures in aid of negotiations towards a license agreement. The actual result, and likely purpose of the NDA was ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████.

16.     SAS and Bain, however, prior to the execution of the License Agreement, never provided any disclosure of information pertinent to SAS products.

17.     On October 27, 2023, SAS and Safe Life executed the License and Manufacturing Agreement" (the "License"). Upon execution (the "Effective Date"), Safe Life immediately paid ████████████████████████████████████ of the licensing fee due under the License on October 31, 2023.

18.     The License granted to Safe Life is as follows:

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████,

\*\*\*\*

19.     The duration of the License ███████████████████████████

████████████████████

    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

    ███████████████████████████████████████

████████████████████

    ███████████████████████████████████

            █████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            █████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

            ████████████████████████████████

23.     Section 2.7 ensures Safe Life ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ .

24.     The License further required SAS to immediately provide to Safe Life, ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

**SAS BREACHES BY FAILING TO ██████████████████████████AND
IMMEDIATELY VIOLATING ITS ████████████████OBLIGATIONS**

25.     SAS failed to provide the ████████████████████████████████3,

despite executing the License only days before. To date, SAS has failed to provide ████████

██████████████████████████████████ .

26.     On or about January 21, 2024, in an attempt to move the process along, Safe Life

sent to SAS the list of ████████████████████████████████████████

██████████████████████████ .

27.     Safe Life, despite having paid SAS/Bain      ████████████████████

████████████████ and has, since mid-2024, been involved in litigation in state court to enforce

its contractual rights.

28.     Shortly, after signing the License and accepting the Initial Payment, SAS materially

breached the License in other ways.

13

29.29.     ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████

32.     Only after the License was executed and SAS/Bain had ███████████████

██████████████████████████████████████████████████████████.

33.     After execution of the License (in part executed in reliance on SAS's public

representations of their "100% Made in USA" origin) ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

34.34.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

35.    SAS publicly ████████████████████████████████████████████████

████████████████████████████████████    ████████████████████████████████

██████████████████████████████████████████

36.    Rather than obtaining an ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████"

37.    On information and belief, SAS's ███████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████, caused significant damage to Safe Life in both lost sales and harm to Safe Life's

reputation (as Bain and his agents continued to bash anything not "made in America).

████████████████████████████████████████████

38.    Another representation that Safe Life relied upon in entering the License, and which

was relied upon by purchasers of SAS products, was SAS's public marketing representations

regarding the testing of its products.  Specifically, SAS's marketing and sales materials represented

that SAS has an extensive testing regime which lab tested all products for all stated threat levels

and "batch" tested its products.

39.39. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

40.    As a result of the public representations of SAS, Safe Life ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████y.

41.41. ████████████████████████████████████████

42.42. ████████████████████████████████████████████

████████████████████████████████████

43.    In most cases, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

44.    Even more alarming, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████.

45.    Finally, in addition to the failure, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

46.46. ████████████████████████████████████████

████████████████████ ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████.

**FIRST CLAIM FOR RELIEF**

**[Violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)-**██████**]**

47.    Safe Life incorporates and realleges the above paragraphs numbered 1 though 46 as though fully set forth here.

48.    SAS has, over an extended period of time, in its marketing materials and public comments, including on social media, made representations about the origin of its products as "100% Made In America." █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

██    ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

50.    SAS made representations concerning the "100% Made In USA" origin of its products ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████.

51.    SAS's and Bain's representations were ████████████████████████

███████████████████████████████████████████████████

█████████████████████████████.

52.    SAS's and Bain's products affect interstate commers as SAS/Bain advertise and sell SAS products nationwide.

53.    Safe Life has been, and continues to be damaged by ██████████████████

███████████████████████ in excess of $75,000 through the loss of sales, loss of market share, and damage to Safe Life's reputation and good will.

54.    It has become necessary for Safe Life to retain counsel to prosecute this action and Safe Life is entitled to an award of its reasonable attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**

**[Violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)-██████]**

55.    Safe Life incorporates and realleges the above paragraphs numbered 1 through 54 as though fully set forth here.

56.    Additionally, SAS has, in advertising and other public commentary, made representations regarding its alleged comprehensive testing for its products.  These representations have been made over time in an ongoing basis on SAS's website and marketing materials, along with public comments by SAS or its agents in social media.

57. 57.  ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

   ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████.

59.  ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████.

60.    SAS's and Bain's products affect interstate commers as SAS/Bain advertise and sell SAS products nationwide.

61.    Safe Life has been damaged in amount to be proven at trial as a result of the SAS and Bain'███████████████████████ad███████████████████████████ of the SAS products, in the form of lost sales, loss of market share, and damage to Safe Life's reputation in excess of $75,000.

62.     It has become necessary for Safe Life to retain counsel to prosecute this action and Safe Life is entitled to an award of its reasonable attorneys' fees and costs.

WHEREFORE, Counter-claimant Safe Life prays as follows:

1.     For a determination that SAS and Allan D. Bain ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████;

2.     For damages according to proof, in the form of Safe Life's actual damages, and/or disgorgement by SAS and/or Bain of profits resulting from their knowing and intentional false advertising and harm to Safe Life;

3.     For their reasonable attorneys' fees and costs;

4.     For such further relief, including as appropriate injunctive or declaratory relief, the Court deems just and proper.

Respectfully submitted,

**Shackelford, McKinley & Norton, LLP**

/s/ Derek D. Rollins
Derek D. Rollins
State Bar No. 24029803
Southern Dist. Bar. No. 32108
Email: drollins@shackelford.law
Martha Hardwick Hofmeister
State Bar No. 08981500
Email: mhofmeister@shackelford.law
9201 N. Central Expressway, Fourth
Floor Dallas, Texas 75231
Tel: 214-780-1400; Fax: 214-780-1401
Marianne G. Robak
State Bar No. 24048508
717 Texas Avenue, 27th
Floor Houston, Texas 77002
Tel: 832-415-1801; Fax: 214-780-1401
Email: mrobak@shackelford.law

**HOWARD & HOWARD ATTORNEYS**

Todd E. Kennedy, Esq. Admitted Pro Hac Vice
tkennedy@howardandhoward.con
Joanna M. Myers, Esq. Admitted Pro Hac Vice
jmm@h2law.com
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Tel: 702-667-4828; Fax: 702-567-1568

**ATTORNEYS FOR DEFENDANTS SAFE LIFE
DEFENSE LLC AND NICOLAS GROAT**

## CERTIFICATE OF SERVICE

I hereby certify that, on this the 30th day of May, 2025 a true and correct copy of the

above and foregoing instrument has been served in accordance with the Federal Rules of Civil

Procedure.


/s/  Derek D. Rollins

Derek D. Rollins